SUMMARY MEMORANDUM AND OPINION;
NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Minerva DeLeon, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  12-cv-0503 (RLW) |
| | ) | |
| | ) | |
| U.S. Airways, Inc. *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION[1]

Plaintiff Minerva DeLeon, a retiree of US Air, Inc., brought this action to challenge

defendant Pension Benefit Guaranty Corporation's ("PBGC") determination that she is entitled

to only $79.67 in monthly retirement benefits after 20 years of service.  Plaintiff sues PBGC in

Count I of the Second Amended Complaint [Dkt. # 60] ("Am. Compl.") for "Failure to Properly

Calculate Monthly Retirement Benefits," and in Count II for "Breach of Fiduciary Duty."  Am.

Compl. at 6, 8.  PBGC moves pursuant to Fed. R. Civ. P. 12(b)(6)  to dismiss Count II of the

amended complaint and to strike Plaintiff's request for attorney's fees.  Def. PBGC's Mot. to

---

[1]  This unpublished memorandum opinion is intended solely to inform the parties and any reviewing court of the basis for the instant ruling, or alternatively, to assist in any potential future analysis of the res judicata, law of the case, or preclusive effect of the ruling. The Court has designated this opinion as "not intended for publication," but this Court cannot prevent or prohibit the publication of this opinion in the various and sundry electronic and legal databases (as it is a public document), and this Court cannot prevent or prohibit the citation of this opinion by counsel. *Cf.* Fed. R. App. P. 32.1. Nonetheless, as stated in the operational handbook adopted by our Court of Appeals, "counsel are reminded that the Court's decision to issue an unpublished disposition means that the Court sees no precedential value in that disposition." D.C. Circuit Handbook of Practice and Internal Procedures 43 (2011).

SUMMARY MEMORANDUM AND OPINION;
NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS.

Dismiss Count II of the Second Am. Compl. and to Strike Pl.'s Request for Attorney's Fees [Dkt. # 62]. Upon consideration of the parties' submissions, the Court will grant Defendant's motion in its entirety.

## BACKGROUND

The basic facts are as follows. Plaintiff worked actively at US Air from July 13, 1987 until February 25, 1994, when she was placed on medical leave because of a work-related back injury she suffered on July 7, 1993. Am. Compl. ¶¶ 6-13. On January 5, 1995, Plaintiff's work status was changed to "medical leave due to Social Security disability," and Plaintiff was found disabled by the Social Security Administration as of November 1, 1995. *Id.* ¶¶ 14-15. From the beginning of her employment, Plaintiff participated in the Retirement Plan for Certain Employees of US Airways, Inc. ("the Plan"). "On August 11, 2002, U.S. Airways Group, Inc. and seven subsidiaries (collectively, "U.S. Airways") filed voluntary petitions in the Bankruptcy Court for the Eastern District of Virginia . . . .," which were subsequently approved. *Boivin v. U.S. Airways, Inc.*, 446 F.3d 148, 150 (D.C. Cir. 2006). The Plan in which Plaintiff participated was terminated on January 17, 2005, "and PBGC became trustee of the Plan on February 1, 2005, pursuant to an agreement between PBGC and US Airways."[2] Def.'s Mem. of P. & A. [Dkt. # 62-1] at 2; *see Boivin*, 446 F.3d at 150 (recounting US Airways' termination of its Pilots' Retirement Income Plan under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA")).

---

[2]   As Defendant explains: "When a pension plan terminates with insufficient assets to pay all benefits earned by participants, PBGC becomes trustee of the plan [and] pays benefits to participants and beneficiaries, subject to statutory limitations . . . . PBGC determines participants' benefits in accordance with the terms of the pension plan, Title IV of ERISA, and PBGC's regulations." Def.'s Mem. of P. & A. at 2. PBGC is a wholly owned United States corporation "established within the Department of Labor." 29 U.S.C. § 1302(a).

SUMMARY MEMORANDUM AND OPINION;
NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS.

Plaintiff alleges the following.  In 1994, "US Air issued to [her] a Corporate Policy Manual stating '[e]mployees awarded Social Security Disability Benefits are eligible to continue to accrue retirement plan credited service[;] [t]hus, retirement benefits continued to accrue to disabled employees through at least 1994." Am. Compl. ¶ 16.  "As early as 1996, [Plaintiff] was in communication with US Air about her disability status and how it would affect her retirement options," but received no response.  *Id.* ¶¶ 19-20.  Plaintiff "had numerous exchanges with the Defendant and her former employer through which she received incorrect and conflicting information concerning her benefits in the months and years leading up to her retirement in 2008." Am Compl. ¶ 18.  Plaintiff "submitted to Defendant an informational report which informed Defendant of her age, 63 at the time, and the fact that she was on a medical leave of absence from US Air." *Id.* ¶ 21.  In December 2005, Plaintiff contacted PBGC "about the possibility of retiring and drawing on her benefits under the CE Plan." *Id.* ¶ 22.  On January 25, 2006, plaintiff applied with PBGC for benefits but withdrew her application "[d]ue to confusion over the effect of pending related litigation on her retirement benefits." *Id.* ¶ 23.  In 2007, plaintiff "made multiple phone calls to Defendant, questioning specifically the impact of her disability status on her eligibility to obtain retirement benefits." *Id.* ¶ 24.  She received "additional forms." *Id.* ¶ 25.

Plaintiff further alleges that her "attempts to comply with Defendant's processes were met with additional information requests," that her "monthly benefits were 'estimated' no less than ten times, producing ten different benefit estimates," and that she "was variously told that she either retired or was terminated from US Air on at least four different dates between 1991

3

and 2005." *Id.* ¶¶ 21-28.  Plaintiff "was also advised that her status as an active employee in

2007 made [her] ineligible for retroactive retirement benefits." *Id.* ¶ 28.

On February 26, 2008, Plaintiff reapplied for benefits and included a letter questioning

the accuracy of PBGC's "most recent benefit estimate." *Id.* ¶ 30.  "In the ensuing months,"

Plaintiff "received multiple form letters and solicitations for documents already in Defendant's

possession, but no response to her real concern, the incorrect computation of her benefits." *Id.* ¶

31.

PBGC eventually paid Plaintiff $71.21 per month, *see* Def.'s Mem. of P. & A. at 2, but

increased that amount to the current monthly payment of $79.67.  Am. Compl. ¶ 34.  Plaintiff

alleges that she waited "over a year and a half and subsist[ed] on dramatically reduced benefits"

only to be advised in September 2009 "that Defendant's final computation of her benefit was

$79.67 per month." *Id.*  "As part of its determination, PBGC included a statement that 'the Date

of Benefit Freeze is the date the plan ceased accruals, for this plan, 12/31/1991.'" *Id.* ¶ 35.  "On

that basis," Plaintiff alleges, Defendant "incorrectly credited [Plaintiff] with only 4 years of

service and calculated her Final Average Monthly Earnings as $1,455.74." *Id.*

On December 18, 2009, Plaintiff appealed PBGC's determination to the Appeals Board,

claiming that PBGC failed to credit her with 20 years' service and improperly calculated her

average earnings. *Id.* ¶ 36.  The Appeals Board upheld PBGC's determination on December 8,

2010. *Id.* ¶ 37.  Plaintiff filed suit on March 24, 2011, in the Western District of Texas, which

transferred the case here on March 29, 2012.

SUMMARY MEMORANDUM AND OPINION;
NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS.

## LEGAL STANDARD

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, acceptable as true, to state a claim to relief that is plausible on its face." *Anderson v. Holder*, 691 F. Supp. 2d 57, 61 (D.D.C. 2010) (brackets omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (other citation and internal quotation marks omitted). A court considering a Rule 12(b)(6) motion must construe the complaint in the light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994). However, where the well-pleaded facts in the complaint do not permit a court, drawing on its judicial experience and common sense, to infer more than the "mere possibility of misconduct, the complaint has alleged -- but [ ] has not shown -- that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citation and internal quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss, the Court may consider "any documents either attached to or incorporated in the complaint . . . without converting the motion to dismiss into one for summary judgment." *Baker v. Henderson*, 150 F. Supp. 2d 13, 15 (D.D.C. 2001) (citations omitted). This includes documents that are "referred to in the complaint and [ ] central to the plaintiff's claim." *Solomon v. Off. of the Architect of the Capitol*, 539 F. Supp. 2d 347, 349-50 (D.D.C. 2008) (citing *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, 38 Fed. Appx. 4 (D.C. Cir. 2002)) (internal citations omitted). "It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to

5

SUMMARY MEMORANDUM AND OPINION;
NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS.

address as conceded." *Hopkins v. Women's Div., General Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd* 98 Fed.Appx. 8 (D.C. Cir. 2004).

## ANALYSIS

"To state a claim under ERISA § 502(a)(3), Plaintiff must demonstrate that Defendant acted in a fiduciary capacity." *Soland v. Geo. Wash. Univ.*, Civ. No. 10-2034, --- F. Supp. 2d ---, 2013 WL 66219, at *2 (D.D.C. Jan. 7, 2013). The ERISA statute states that "a person is a fiduciary with respect to a plan to the extent he exercises any discretionary authority or discretionary control respecting management of such plan . . . or he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). "The Supreme Court has recognized that breach of fiduciary duty under ERISA can be an actionable claim." *Soland*, 2013 WL 66219, at *2 (citing *Varity Corp. v. Howe*, 516 U.S. 489 (1996)). Furthermore, Defendant acknowledges that PBGC, as trustee of a pension plan, may be sued "for 'appropriate equitable relief' pursuant to 29 U.S.C. § 1303(f)(1)," but it "reserves the right to argue . . . that it is not a fiduciary within the meaning of the statute." Def.'s Mem. of P. & A. at 6-7, nn. 4, 5. For purposes of resolving the instant motion to dismiss, the Court accepts as true Plaintiff's allegation that PBGC is a fiduciary.

"ERISA requires a 'fiduciary' to 'discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.' " *Varity Corp.*, 516 U.S. at 506 (quoting 29 U.S.C. § 1104(a)(1)). A claim of breach of such duties typically depends on some form of deception or material misrepresentation by the fiduciary. *See id.* (posing the "question [as] whether Varity's deception violated ERISA-imposed fiduciary obligations . . . . As other courts have held, lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in [§ 1104(a)(1)] of

SUMMARY MEMORANDUM AND OPINION;
NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS.

ERISA.") (citations, internal quotation marks, and alterations omitted).  Furthermore, there is "a line of cases holding that . . . in the ERISA context, the breach must be willful or involve bad faith conduct," *Boivin v. US Airways, Inc.*, 297 F. Supp. 2d 110, 117 (D.D.C. 2003) (citations omitted), neither of which is pled here.

Under Count II of the Amended Complaint, Plaintiff alleges the following:

- [Her] Normal Retirement Date, after which participants are entitled to full retirement benefits, was May 1, 2007.  Am. Compl. ¶ 54.

- [T]he CE Plan provides a number of early retirement options, including provisions for early unreduced benefits options starting at age 62.  *Id.* ¶ 55.

- [She] did not begin receiving retirement benefits under the plan until February 1, 2008.  *Id.* ¶ 56

- Despite her numerous communications with US Air and Defendant concerning her eligibility to retire and benefit options, no representative of either . . . clearly communicated . . . when she would be entitled to retire or that early retirement options could be available to her that would not reduce her benefit.  Am. Compl. ¶ 57.

- Defendant and US Air provided [Plaintiff] a stream of incorrect and conflicting information, over a period of years which served only to further complicate her task of making reasoned decisions [about] her retirement options.  *Id.* ¶ 58.

- Defendant breached its fiduciary duties to [Plaintiff] by responding to her inquiries with material misrepresentations on which [she] relied in making retirement decisions.  *Id.* ¶ 60.

Plaintiff then concludes that because her options were not "clearly explained," she "lost the opportunity to elect early retirement or even standard retirement at her 'Normal Retirement Date,' " which costs her "economic loss of many months of retirement benefits." *Id.* ¶¶ 61-62.

In her opposition to the instant motion, Plaintiff recounts specific questions she directed to US Air before defendant became trustee of the Plan, her "contact[]" generally with PBGC in December 2005, and her "multiple phone calls" to PBGC in 2007 "questioning specifically the impact of her disability status on her eligibility to obtain retirement benefits." *See* Pl's Opp'n at 4 (citing Second Am. Compl. ¶¶ 19, 22, 24). Plaintiff reiterates that "PBGC either failed to respond to [her] inquiries or responded with incorrect information . . . .," but she does not specify the "incorrect information" PBGC supplied and points only to the unhelpful allegation in the complaint that "[t]o the extent [ ] Defendant responded to [her] inquiries, it was by mailing Ms. DeLeon additional forms."[3] *Id.* at 4 (quoting Second Am. Compl. ¶ 25).

---

[3]    Plaintiff also alleges for the first time in her opposition that Defendant breached its fiduciary duty by "failing to adequately investigate the basis for the alleged freeze of the CE Plan in 1991." Pl.'s Opp'n at 3. Since this theory of Plaintiff's breach claim is predicated on facts that were not alleged in the amended complaint, it is "clearly impermissible" for Plaintiff to attempt to amend the complaint by inserting a new claim at this juncture. *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 107 (D.D.C. 2004) (citing cases). Even if considered, the claim would likely be dismissed without prejudice because Plaintiff does not allege that she exhausted this claim administratively by presenting it first to PBGC. *See Boivin v. U.S. Airways, Inc.*, 446 F.3d 148, 154 (D.C Cir. 2006) ("[B]arring exceptional circumstances, parties aggrieved by decisions of pension plan administrators [here PBGC] must exhaust [their available] administrative remedies . . . before challenging those decisions in court under ERISA.") (citation and internal quotation marks omitted). And "[t]he Court's review of a benefits determination 'may only be based on the record available to the administrator or fiduciary at the time the decision was made.' " *Marcin v. Reliance Standard Life Ins. Co.*, Civ. No. 10-1816, --- F. Supp. 2d ---, 2012 WL 4466785, at *7 (D.D.C. Sept. 28, 2012) (quoting *Crummett v. Metro. Life Ins. Co.*, Civ. No. 06–01450, 2007 WL 2071704, at *3 (D.D.C. July 16, 2007)). Furthermore, while not yet decided by the District of Columbia Circuit, "[c]ourts in this Circuit have generally followed the view of the majority of circuits that a breach of fiduciary claim under 29 U.S.C. § 1132(a)(3) cannot stand when a plaintiff has an adequate remedy for her injuries under § 1132(a)(1)(B)" to recover benefits or

SUMMARY MEMORANDUM AND OPINION;
NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS.

The Court agrees that Plaintiff's generalized allegations cannot sustain a fiduciary breach claim against PBGC. *See* Def.'s P & A. at 7-8; *cf. Soland*, 2013 WL 66219, at *3 (finding claim stated where former employer allegedly failed to disclose to plaintiff information about a Voluntary Separation Incentive Program under "serious consideration at the time of the parties' ongoing [separation] discussions"). Plaintiff states that Defendant made "material misrepresentations," but she has not provided any "factual enhancement" or elaboration. *Iqbal*, 556 U.S. at 678. Simply put, Plaintiff has not identified one statement allegedly made by PBGC to begin the inquiry of whether a material misrepresentation occurred. Even at this pleading stage, Plaintiff must offer more than "naked assertions" and "labels and conclusions" to survive a motion to dismiss. *Id.* (citations and internal quotation marks omitted). Plaintiff's allegations convey nothing more than her frustration with obtaining a final decision about her retirement benefits, the correctness of which is the subject of the remaining Count I of the amended complaint. Hence, the motion to dismiss Count II will be granted.

Plaintiff has not opposed and, thus, has conceded Defendant's argument for striking Plaintiff's request for attorney's fees. *See* Def.'s Mem. of P. & A. at 10-11. Defendant correctly asserts that attorney's fees are not available in civil actions against PBGC. *See Stephens v. U.S. Airways Group, Inc.*, 644 F.3d 437, 441-42 (D.C. Cir. 2011) (ERISA "does not authorize attorney's fees for actions against the PBGC . . . .") (citing 29 U.S.C. § 1303(f)).

---

enforce rights under the plan. *Zalduondo v. Aetna Life Ins. Co.*, 845 F. Supp. 2d 146, 155 (D.D.C. 2012) (citing cases).

SUMMARY MEMORANDUM AND OPINION;
NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS.

For the foregoing reasons, defendant's motion to dismiss Count II and to strike plaintiff's

request for attorney's fees is granted.  A separate Order accompanies this Memorandum Opinion.

Date:  May 8, 2013



Digitally signed by Judge
Robert L. Wilkins
DN  cn=Judge Robert L.
Wilkins, o=U.S. District Court,
ou=Chambers of Honorable
Robert L. Wilkins,
email=RW@dc uscourt gov,
c=US
Date  2013 05 08 12 15 02
-04'00'

_____
ROBERT L. WILKINS
United States District Judge