SUMMARY MEMORANDUM AND OPINION;
NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Minerva DeLeon, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 12-0503 (RLW) |
| | ) |
| U.S. Airways, Inc. *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**[1]

Plaintiff Minerva DeLeon, a retiree of US Air, Inc., brought this action to challenge defendant Pension Benefit Guaranty Corporation's ("PBGC") determination that she is entitled to only $79.67 in monthly retirement benefits after 20 years of service. Plaintiff sues PBGC in Count I of the Second Amended Complaint [Dkt. # 60] ("Am. Compl.") for "Failure to Properly Calculate Monthly Retirement Benefits," and in Count II for "Breach of Fiduciary Duty." Am. Compl. at 6, 8. The latter count was dismissed on May 8, 2013. *See DeLeon v. U.S. Airways*,

---

[1] This unpublished memorandum opinion is intended solely to inform the parties and any reviewing court of the basis for the instant ruling, or alternatively, to assist in any potential future analysis of the res judicata, law of the case, or preclusive effect of the ruling. The Court has designated this opinion as "not intended for publication," but this Court cannot prevent or prohibit the publication of this opinion in the various and sundry electronic and legal databases (as it is a public document), and this Court cannot prevent or prohibit the citation of this opinion by counsel. *Cf*. Fed. R. App. P. 32.1. Nonetheless, as stated in the operational handbook adopted by our Court of Appeals, "counsel are reminded that the Court's decision to issue an unpublished disposition means that the Court sees no precedential value in that disposition." D.C. Circuit Handbook of Practice and Internal Procedures 43 (2011).

*Inc.*, No. 12-0503, slip op., 2013 WL 1903661 (D.D.C. May 8, 2013) (hereafter *DeLeon I*) (granting PBGC's motion to dismiss fiduciary breach claim under Rule 12(b)(6)).

What remains in this case is PBGC's motion for summary judgment on Count I of the amended complaint. Def. PBGC's Mot. for Summ. J. [Dkt. # 77]. Plaintiff, through appointed counsel, has opposed the motion, Pl. Minerva DeLeon's Opp'n to Def. PBGC's Mot. for Summ. J. [Dkt. # 81], and PBGC has replied, Def. PBGC's Reply Mem. in Support of Mot. for Summ. J. [Dkt. # 82].[2] Upon consideration of the parties' submission and the Administrative Record ("AR") [Dkt. ## 56, 83], the Court will grant Defendant's motion and enter judgment accordingly.

## BACKGROUND

How PBGC became trustee of U.S. Airways' retirement plan on February 1, 2005, is recounted in *DeLeon I* and will not be repeated here. The undisputed facts relevant to the instant motion are as follows. From the beginning of her employment with US Airways in July 1987, Plaintiff participated in the Retirement Plan for Certain Employees of US Airways, Inc. ("the Plan"). *DeLeon I* at *1. Section 19.1 of the Plan states:

> Notwithstanding any other provision of the Plan to the contrary, no further benefits shall accrue under the Plan after December 31, 1991 (the 'freeze date') with respect to any Participant in the Plan, other than a participant whose coverage under the Plan is provided pursuant to a collective bargaining agreement or a Piedmont Aviation Services Participant. Such a Participant's Accrued Benefit under the Plan shall be determined based on his Final Average Earnings as of the freeze date (determined as if the Participant's service ceased on the freeze date), his Credited Service as of the freeze date, the Adjustment Factors in effect under the Plan as of the freeze date, and the terms of the Plan as in effect on the freeze date.

---

[2] The Court extends its gratitude to the law firm of Akin Gump Strauss Hauer & Feld, LLP, led by Anthony T. Pierce, Esq., for its skilled and zealous *pro bono* representation of Ms. DeLeon.

PBGC's Statement of Material Facts Not in Genuine Dispute ("PBGC's Facts") [Dkt. # 77-1] ¶ 4 (AR 063).[3] In February 1994, Plaintiff was placed on medical leave because of a work-related back injury she suffered on July 7, 1993. Plaintiff was found disabled by the Social Security Administration as of November 1, 1995. *Id.* ¶ 8 (AR 293).

In March 2008, Plaintiff applied to PBGC for pension benefits under the Plan and began receiving an estimated monthly benefit of $71.21 on June 1, 2008. PBGC's Facts ¶¶ 10-11 (AR 208, 231). Plaintiff's payment was increased slightly to $79.67 in September 2009, when PBGC issued its formal determination letter accompanied by a Benefit Statement. *Id.* ¶¶ 12-13 (AR 259, 261-63). According to the Statement, Plaintiff's benefit was calculated from her date of hire on July 13, 1987, to the date of the "Benefit Freeze" on December 31, 1991, and her "Final Average Monthly Earnings" were listed as $1,455.74. AR 262. The Statement also noted that Plaintiff was actively employed on January 17, 2005, when the Plan was terminated under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA").

On December 18, 2009, Plaintiff appealed PBGC's determination to the Appeals Board, claiming that PBGC failed to credit her with 20 years' service (as opposed to four years) and improperly calculated her average earnings based on $17,468.92 (as opposed to $19,270). AR 274. The Appeals Board upheld PBGC's determination on October 20, 2010. AR 001. The Appeals Board first addressed "the issue of whether you are entitled to additional credit service for periods you were working or on medical leave after the December 31, 1991 freeze date," and concluded that Section 19.1 of the Plan, as amended in 1994, "stopped the accrual of credit

---

[3] The Administrative Record was docketed twice. The Court will cite to the Administrative Record comprising the parties' Joint Appendix [Dkt. # 83-1].

service as of December 31, 1991 [and] did not include any exceptions for individuals on medical leave or other leave status." AR 003. The Appeals Board also affirmed that under the amended Plan, Plaintiff had earned 2.4 years of credited service between her hire date of July 13, 1987, and December 31, 1989, and .8 years of credited service in 1990 and 1991 for part-time work, which amounted to four years of credited service. *Id*. The Appeals Board next addressed Plaintiff's average earnings argument and affirmed that Section 19.1 of the Plan froze that calculation as "based upon [a participant's] Final Average Earnings" as of December 31, 1991, and that any earnings after that date were not included in the calculation. *Id*. The benefit amount was based on the highest average earnings "received in any three full calendar years during the last 10 calendar years before December 31, 1991," which, in Plaintiff's case, were identified as 1989, 1990, and 1991. Plaintiff's earnings totaled $52,406.76; divided by three years, her highest average earnings for the requisite time period were calculated to be $17,468.92. *Id*.

## LEGAL STANDARD

When, as here, PBGC is appointed statutory trustee, it is responsible for administering benefits under the terminated pension plan, which includes making determinations with respect to the plan participants' benefits. *See* 29 U.S.C. § 1342(d)(1)(B); *Air Line Pilots Assoc. Int'l. v. PBGC*, 193 F. Supp. 2d 209, 211-12 (D.D.C. 2002) (discussing ERISA's statutory framework). Participants may challenge such determinations before the PBGC Appeals Board, *see* 29 C.F.R. §§ 4003.21, 4003.51, and "[t]he decision of the Appeals Board constitutes the final agency action by the PBGC with respect to the determination which was the subject of the appeal," *id*. § 4003.59(b). Decisions of the Appeals Board are then subject to review under the Administrative Procedure Act ("APA"). *See PBGC v. LTV Corp*., 496 U.S. 633, 636 (1990); *Davis v. PBGC*,

864 F. Supp. 2d 148, 155 (D.D.C. 2012); *United Steel v. PBGC*, 839 F. Supp. 2d 232, 241 (D.D.C. 2012).

Under the APA, a court must set aside agency action as unlawful if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). The "arbitrary and capricious" standard of review is a narrow one, and it is well settled that "a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). While a reviewing court must conduct a "searching and careful" review, the agency's action remains "entitled to a presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971). The Court must uphold PBGC's decision "so long as the agency 'engaged in reasoned decision making and its decision is adequately explained and supported by the record.' " *Clark County v. FAA*, 522 F.3d 437, 441 (D.C. Cir. 2008) (quoting *N.Y. Cross Harbor R.R. v. STB*, 374 F.3d 1177, 1181 (D.C. Cir. 2004)); *see accord Vanderkam v. PBGC*, 943 F. Supp. 2d 130, 137-38 (D.D.C. 2013). Because under the present circumstances "the district court sits more as an appellate tribunal than as a trial court," *Leahy v. Raytheon Co.*, 315 F.3d 11, 18 (1st Cir. 2002), "[t]he Court's review of a benefits determination 'may only be based on the record available to the administrator or fiduciary at the time the decision was made.' " *Marcin v. Reliance Standard Life Ins. Co.*, Civ. 895 F. Supp. 2d 105, 113 (D.D.C. 2012) (quoting *Crummett v. Metro. Life Ins. Co.*, No. 06-01450, 2007 WL 2071704, at *3 (D.D.C. July 16, 2007)). Hence, a plaintiff seeking review of an ERISA-plan benefit decision may not "supplement the [court] record with new documents." *Lee v. Hartford Life & Acc. Ins. Co.*, 928 F. Supp. 2d 51, 57 (D.D.C. 2013).

**DISCUSSION**

Plaintiff argues that a genuine issue exists with regard to the calculation of her benefits because PBGC failed to consider a provision of a 1994 Corporate Policy Manual that "sheds light on whether the alleged freeze was meant to cover employees with a Social Security Disability." Pl.'s Mem. of P. & A. at 6; Ex. A (Jan. 1, 1994 Corp. Policy Manual § 8.1, stating "[e]mployees awarded Social Security Disability Benefits are eligible to continue to accrue retirement plan credited service"). This argument fails to overcome summary judgment for the following two reasons.

First, it is undisputed that PBGC was unaware of the policy manual at the time of the challenged decision. *See* Decl. of Lisa Lee [Dkt. # 69] (confirming "[b]ased on a diligent search . . . that US Airways did not provide a copy or original of a '1994 US Airways Corporate Policy Manual' to PBGC and did not inform PBGC of such a manual, and no such manual was used in PBGC's determination of pension benefits for participants in the US Airways Plans"). And, as stated previously, the Court's review is limited to the record that was available to PBGC at the time of the decision.

Second, the controlling language in the Plan "speak[s] clearly" so that there is no need to "look outside the plan's written language to decide what [the] agreement means." *US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537, 1549 (2013) (citations and internal quotation marks omitted); *see id*. at 1548 (observing that ERISA's "statutory scheme . . . 'is built around reliance on the face of written plan documents.' ") (quoting *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995)). The Plan states: "Notwithstanding any other provision of the Plan to the contrary, no further benefits shall accrue under the Plan after December 31, 1991 (the 'freeze date')," that "Credited Service [shall be determined] as of the freeze date," and that

NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS.

determinations shall be made "as if the Participant's service ceased on the freeze date." The Plan's language is unambiguous and PBGC, as trustee of the Plan, was bound by the terms of the Plan. *See* 29 U.S.C § 1342(d) (1)(A)(i), (B)(i) (empowering trustee "to do any act authorized by the plan . . ." and "to pay benefits under the plan in accordance with the requirements of this subchapter"); *McCutchen*, 133 S.Ct. at 1548 ("Every employee benefit plan shall be established and maintained pursuant to a written instrument . . . and an administrator must act in accordance with the documents and instruments governing the plan insofar as they accord with the statute[.]") (statutory citations and internal quotation marks omitted).

Plaintiff contends that "the 1994 Manual is a separate document that sheds light on whether the alleged freeze was meant to cover employees with a Social Security Disability determination." [Dkt. 81 at 6.] However, the excerpt of the 1994 Corporate Policy Manual describing the Plan is, at best, a "summary" of the Plan, and the Supreme Court has held that "summary documents, important as they are, provide communication with beneficiaries about the plan, but . . . their statements do not themselves constitute the terms of the plan for purposes of § 502(a)(1)(B)." *CIGNA Corp. v. Amara*, ___ U.S. ___, 131 S.Ct. 1866, 1878 (2011). Thus, the 1994 Manual creates no rights, and its description of benefits cannot override the explicit language of the Plan. Here, Plaintiff does not claim that she is a member of either group Section 19.1 excepts from the freeze date, *i.e.*, "a participant whose coverage under the Plan is provided pursuant to a collective bargaining agreement or a Piedmont Aviation Services Participant." Even assuming that it is appropriate to use the 1994 Manual to "shed light" on the meaning of the Plan language, the manual provides no basis for understanding the meaning or scope of the two explicit exceptions from the freeze date set forth in Section 19.1 of the Plan. In sum, the

Administrative Record provides a rational and properly supported basis for PBGC's determination of Plaintiff's monthly payment.

## CONCLUSION

For the foregoing reasons, the Court finds no materially disputed fact with regard to PBGC's calculation of Plaintiff's monthly retirement benefit and concludes that Defendant is entitled to judgment as a matter of law on Count I of the amended complaint. A separate Order accompanies this Memorandum Opinion.

							_____
							ROBERT L. WILKINS
							United States Circuit Judge
							(Sitting by designation in the United States
							District Court for the District of Columbia)

Date: January 31, 2014